## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CASPER RANKIN, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>GENERAL MOTORS LLC,<br><br>        Defendant. | **Case No.: 20-cv-13279**<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Casper Rankin, on behalf of himself and all others similarly situated, by and through his undersigned counsel, bring this action against General Motors LLC. Plaintiff alleges the following based on personal knowledge as to his own acts and on the investigation conducted by counsel as to all other allegations:

### SUMMARY OF THE ACTION

1.     Plaintiff brings consumer protection, common law, and warranty claims, as well as claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*., against Defendant General Motors LLC ("GM").

2.     This action arises from the sale or lease of thousands of 2017 – 2019 Chevrolet Bolt ("Chevy Bolt," "Bolt," or "Class Vehicles") vehicles throughout California and the United States manufactured by Defendant GM that are equipped with defective high voltage batteries which pose a significant fire risk when charged

to full or near full capacity. The fire risk stemming from the defective high voltage batteries is present even when the vehicle is off, is parked, and is not receiving a charge. ("**the Battery defect**" or "**the defect**") as indicated below.

3.     The defect affects model year 2017 through 2019 Chevy Bolt vehicles sold or leased to consumers in the United States, including Plaintiff's vehicle. All Class Vehicles share the same dangerously defective condition that GM failed to disclose to Plaintiff, consumers, and each Class Member.  General Motors issued a recall on November 13, 2020, citing the potential number of vehicles affected at 50,932 and stating that a battery fire increases the risk of injury.  *See* https://static.nhtsa.gov/odi/rcl/2020/RCAK-20V701-4648.pdf (last accessed Dec. 2, 2020) (Exhibit 1).

4.     General Motors acknowledged in these recall documents that the defective high voltage batteries create significant safety risks: "A certain number of these vehicles were built with high voltage cells produced at LG Chem's Ochang, Korea facility that may pose a risk of fire when charged to full, or very close to full, capacity." *See* GM Recall Bulletin, Product Safety Recall, Bulletin No. 15595A (Exhibit 2).

5.     Plaintiff and Class Members purchased GM vehicles fitted with a defective high voltage battery pack that poses a significant fire risk.  This is a major

safety concern because owners have reported that a fire may originate from the battery pack when the vehicle is parked, such as in a garage or car port.

6.      GM sold and leased the Class Vehicles despite what it knew or should have known about the defect. GM chose and continues to choose financial gain at the expense of consumers by implementing a software solution that diminishes Bolt owners' batteries rather than replacing the defective battery pack outright in Class Vehicles.

7.      Despite what it knew or should have known, GM has failed to provide an adequate solution that does not diminishes Bolt owners' batteries and lower their driving range contrary to Bolt owners' expectations and GM's claims regarding the range the Class Vehicles can achieve.

8.      Plaintiff and Class Members have suffered harm because of GM's decision to limit, through software, their vehicle's battery capacity and, by extension, the distance they can travel on a single charge. Plaintiff and Class members have overpaid for their vehicles and will pay significant sums for GM to attempt, and possibly fail, to properly repair their vehicles and return the battery pack to full capacity.

9.      GM knew or should have known of the defect and that the Class Vehicles' high voltage battery pack is not fit for its intended purpose, as detailed at length in the factual background section below.

10.    GM actively concealed and/or failed to notify Bolt purchasers of the existence and nature of the defect and of the safety hazard created by the defect. GM has failed to diagnose the cause of the defect; it has not offered to replace the defective battery pack to its customers; and it has not provided assurances to owners, present or future, that their vehicles' battery capacity will be fully restored, to include the full driving range of their vehicles. GM's conduct violates well-established consumer protection laws throughout the country, constitutes a continuous breach of its warranties to Plaintiffs and consumers in the United States, and constitutes fraudulent concealment under common law.

11.    Plaintiff brings this action on behalf of himself and all those similarly situated ("Class," "Class Members," "Consumers," "Owners") for GM's breach of its warranties across the United States and GM's unfair and deceptive trade practices in violation of the consumer protection laws of various state laws.

12.    On behalf of the Class Members he seeks to represent, Plaintiff seeks an award of damages in excess of $5,000,000, including the cost of inspecting and replacing the defective high voltage battery pack and equitable relief, including an order requiring GM to adequately repair the defect, return the vehicle's battery pack to its original charging capacity and driving range. Furthermore, Plaintiff seeks damages, injunctive and declaratory relief, restitution, disgorgement of profits, attorneys' fees and costs, punitive damages, and the repair of, replacement of, or

4

refund of money paid to own or lease all Class Vehicles.

## PARTIES

### A. Plaintiff Casper Rankin

13.     Plaintiff Casper Rankin is a citizen of California and resides in San Diego, California.

14.     On or about January 31, 2020, Plaintiff Rankin purchased a Certified Pre-Owned 2017 Chevrolet Bolt from Courtesy Chevrolet Center at 750 Camino Del Rio N, San Diego, CA 92108.

15.     Plaintiff Rankin was in the market for an affordable, high-ranged electric vehicle and, in purchasing his Class Vehicle, relied on GM's representations about the range and features of the vehicle, including its safety. He was influenced by GM's marketing of its vehicles as capable of achieving the range advertised, as he needed to be able to complete a round trip visit to drop off and pick up his daughter at his in-laws' residence. This trip is not possible with limited range. In making representations about the Class Vehicle, GM never disclosed the defect. Plaintiff Rankin greatly valued his electric vehicle's range and safety. Disclosure of the defect would have affected his purchasing decision.

16.     Plaintiff Rankin received his recall notice on or about November 28, 2020. He considered a software solution that reduced the vehicle's range to solve a battery issue unacceptable. The effect of the software update on Mr. Rankin's

vehicle will be especially severe since he estimates he currently receives 201 miles on a full battery. Limiting his battery to only accept a 90 percent charge will reduce Mr. Rankin's range to about 180 miles.

17.    GM's software update will negatively impact Mr. Rankin's commute and charging habits. A reduced range means Mr. Rankin will have to charge his car more often. He will have to resort to the availability of roadside chargers as part of his commute, rather than being able to make a roundtrip after charging from his home. This can add upwards of an hour to his trip in order for the car to recharge enough for Mr. Rankin to finish his trip. Additionally, roadside charges add significant charging costs, compared to what he would pay at home while charging at night. Mr. Rankin's approximate nighttime charging cost is nine cents per kilowatt hour. Roadside chargers, however, cost approximately 38 cents per kilowatt hour, which amounts to more than four times what he would otherwise pay. The necessity to find roadside chargers will also contribute to his range anxiety since the amount he can travel will be drastically altered.

18.    Mr. Rankin was unaware of the Battery defect prior to purchase and did not suspect that a remedy to prevent a dangerous battery fire required the reduction of his vehicle's range.

19.     Had Plaintiff Rankin known of the defect at the time of the sale, he would not have purchased the Bolt or would have paid less for it to fully account for the cost of the defect and reduced eMPG and range.

**B. Defendant General Motors LLC**

20.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business at 300 Renaissance Center, Detroit, Michigan 48243. Defendant designs, manufactures, and sells automobiles throughout the United States, including in the State of California, under the brand names Chevrolet, GMC, and Cadillac. GM does business in California, advertising, distributing, and selling its vehicles through its dealer network and other outlets in the State.

21.     GM sells the Class Vehicles through GM franchise dealerships. GM distributes information about the vehicles to its dealers for the purpose of passing that information to consumers. GM also understands that its dealers pass on information from GM about the characteristics, benefits, and quality of its vehicles to consumers. The dealers act as GM's agents in selling the Class Vehicles and disseminating information about the Class Vehicles to customers and potential customers. GM also disseminates information about its vehicles on its website. At the point of sale, as well as in written materials and on its website, GM could have told the truth.

7

## JURISDICTION AND VENUE

22.    This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state from GM, the number of proposed Class Members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs.   28 U.S.C. § 1332(d)(2)(A).

23.    This Court has personal jurisdiction over GM pursuant to 18 U.S.C. § 1965(b) & (d). This Court has personal jurisdiction over GM because GM is headquartered in Michigan, has its principal place of business here, and has purposefully availed itself of the privilege of conducting business activities in the State of Michigan, including the design, manufacture, distribution, testing, sale, lease, and/or warranty of GM vehicles in this State and District. At least in part because of GM's misconduct as alleged in this lawsuit, the Class Vehicles ended up on this state's roads and in dozens of franchise dealerships

24.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, and GM has caused harm to Plaintiff and Class members residing in this District. Moreover, GM has marketed, advertised, sold, and leased the Class Vehicles within this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

25.     GM manufactures, markets, distributes, and warrants automobiles in the United States sold under various brand names, including the Chevrolet brand. This lawsuit concerns model year 2017 through 2019 Chevy Bolt vehicles sold or leased to consumers in the United States, including Plaintiff's vehicle.

### A. GM Introduces the Bolt EV

26.     The Chevy Bolt is GM's first long range fully electric vehicle. GM introduced the Chevy Bolt EV concept in the 2015 Detroit Auto Show and presented it as "a vision for an affordable, long-range all-electric vehicle designed to offer more than 200 miles of range starting around $30,000."[1]

27.     On Jan. 6, 2016, General Motors Chairman and CEO Mary Barra unveiled the 2017 Chevrolet Bolt and touted the vehicle's 200+ mile range and comparatively low charging time to 80 percent capacity, noting that "the Bolt EV can actually give you time back."[2] Highlighting their EV experience derived from the similarly named Chevy Volt, GM partnered with LG electronics "to develop an

---

[1] https://www.autoevolution.com/news/chevrolet-bolt-concept-vehicle-looks-unfinished-at-2015-detroit-auto-show-live-photos-90958.html#press (last visited Dec. 3, 2020) (Exhibit 5).

[2] https://media.gm.com/media/us/en/chevrolet/vehicles/bolt-ev/2019.detail.html/content/Pages/news/us/en/2016/Jan/boltev/0106-barra-ces.html (last visited Dec. 3, 2020) (Exhibit 6).

all-new cell and battery pack to offer more than an estimated 200 miles of range."[3]

28.     The manager of the battery pack engineering group for the Bolt EV noted: "You usually have a battery cell that delivers either the desired levels of energy or power, but not traditionally both.  With this cell design and chemistry we were able to deliver a battery system with 160 kilowatts of peak power and 60 kilowatts hours of energy." *Id.*

29.     GM stated that, in order to keep the battery operating at optimum temperature, the battery used active thermal conditioning, which "results in solid battery life performance." *Id.*

*30.*     The Bolt's battery was differentiated by a *"nickel-rich lithium-ion* chemistry [that] provides improved thermal operating performance over other chemistries." This allowed GM to use "a smaller active cooling system for more efficient packaging." *Id.*

31.     At release, the Bolt was able to achieve GM's touted goals of offering an electric vehicle for less than $30,000 and with more than 200 miles of range.  These figures were crucial for GM to deliver what it considered "a long range, affordable vehicle for the masses."[4]

---

[3] https://media.gm.com/media/us/en/chevrolet/vehicles/bolt-ev/2021.detail.html/content/Pages/news/us/en/2016/Jan/naias/chevy/0111-bolt-du.html  (last visited Dec. 3, 2020) (Exhibit 7).
[4] https://media.gm.com/media/us/en/chevrolet/vehicles/bolt-

32.     GM's achievement earned the Bolt the 2017 Motor Trend Car of the Year award, which GM then used for the vehicle's promotional materials, highlighting the "EPA-estimated 238 miles of range on a full charge."[5]

33.     An electric vehicle that offers range comparable to its gas counterpart allows interested buyers to worry less about the availability of charging ports in their location. Because it takes longer to charge an electric vehicle than it does to put fuel in its gas counterpart, interested buyers consider an electric vehicle's range to determine whether they may need to charge it during their commute, since this will add time they will need to wait for the car to receive enough charge to complete the owner's trip. Upon making its first deliveries of the Bolt, GM printed one recipient's response: "The range and technology attracted me to the Bolt EV."[6]

## B. The Chevy Bolt's High Voltage Battery Pack Presents A Significant Fire Risk When Fully, or Almost Fully, Charged.

34.     According to GM's press releases, the Chevy Bolt battery pack compromised neither energy nor performance. The Bolt is equipped with a battery pack that delivers "160 kilowatts of peak power and 60 kilowatt hours of energy."[7]

35.     Heat constraints were managed through active thermal conditioning

---

ev/2017.detail.html/content/Pages/news/us/en/2016/Jan/boltev/0106-boltev-reveal.html (last accessed Dec. 4, 2020) (Exhibit 8).

`https://plants.gm.com/media/us/en/chevrolet/home.detail.html/content/Pages/news/us/en/2016/dec/1213-boltev.html (last accessed Dec. 4, 2020) (Exhibit 9).

6 *Id.*

7 (Exhibit 7).

and a combination of nickel-rich lithium-ion components that, according to GM, allowed for the use of "a smaller active cooling system for more efficient packaging."[8]

36.    On November 13, 2020, GM issued a safety bulletin recalling 50,932 2017-2019 Chevy Bolt EVs because "[a] certain number of these vehicles were built with high voltage cells produced at LG Chem's Ochang, Korea facility that may pose a risk of fire when charged to full, or very close to full, capacity."[9]

37.    Prior to issuing this safety bulletin, GM acknowledged that it had already been investigating five confirmed cases of fires prior to the National Highway Traffic Safety Administration's investigation.[10]

38.    Plaintiff's and Class Members' vehicles will continue to be susceptible to a fire caused by the defective battery pack until owners themselves access their vehicle's settings and enable the Hill Top Reserve option in the 2017-2018 Bolt models. In 2019 Bolt models, owners will need to access the Target Charge Level setting and limit the charging level to 90 percent. Owners uncomfortable or unable to make these changes, GM warns, should not park their vehicles in their garage or carport until they have visited a dealer to receive a software update.

---

8 *Id.*
9 (Exhibit 2).
10 https://my.chevrolet.com/how-to-support/safety/boltevrecall (last accessed December 4, 2020) (Exhibit 10).

39.     Rather than issue a full recall and battery replacement, GM's interim solution is to install on 2017-2019 Bolt models a software update to automatically limit the maximum state of charge to 90 percent. This software update reprograms the hybrid control module 2 (HPCM2) and will not be disabled until GM finds a permanent solution, which won't be available until 2021 at the earliest. The software update will reduce the Bolt's range from its advertised 238 miles (approximated by the EPA and reported by GM) to approximately 214 miles.

40.     Until Bolt owners either change the vehicle's charging setting or receive the software update, their car will continue to be a fire risk when fully, or nearly fully, charged. Bolt owners who enable the battery charge limitation will reduce their vehicle's driving range and battery capacity, and their vehicle's regenerative ability to restore range while in motion. GM's purported solution will intentionally hobble Bolt owners' range and battery capacity, as well as the vehicle's regenerative ability, not only for an indeterminate time but potentially for the life of the vehicle if GM is unable to fully restore the battery's capacity.

41.     GM has been aware of the defects in its high voltage battery packs since at least the Bolt's launch for the 2017 model year. Nonetheless, GM sold and leased Class Vehicles with the knowledge that they contained defective and potentially dangerous batteries.

**C. GM's Knowledge of the Defect**

42.     GM has been aware of battery and energy management related problems with the Chevy Bolt since at least December 2016, with the launch of several quality improvement programs. One such program, in place on or about December 19, 2016, was entitled "Bolt EV (BEV2) High Voltage Battery Exchange and Internal Parts Process." This manufacturer communication listed the proper steps to take to determine whether internal components or the Rechargeable Energy Storage System (RESS) of the high voltage battery pack needed replacement. If the latter, then GM would order a new Drive Motor Battery to place in the customer's vehicle. This and other manufacturer communications referred to below are reproduced in their entirety in Exhibit B.

43.     On or about April 19, 2018, GM published a manufacturer communication entitled "Vehicle No Start Due to Dead Battery." The advisory notes limit an investigation of this issue only to customers who comment about a dead battery and whose affected part is included in GM's Global Warranty Management/Investigate History link. If a customer met the above two conditions, then the investigation performed would be used "to determine the root cause of the above condition."

44.     GM had already received customer complaints like the following:



January 12, 2018 NHTSA ID NUMBER: 11062432

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11062432

**Incident Date** January 4, 2018

**Consumer Location** SAN JOSE, CA

**Vehicle Identification Number** 1G1FX6S00H4****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | TL* THE CONTACT OWNS A 2017 CHEVROLET BOLT EV. WHILE DRIVING APPROXIMATELY 35 MPH, THE VEHICLE SHUT DOWN IN THE MIDDLE OF THE ROAD. THE "PROPULSION" WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS TOWED TO CAPITOL CHEVROLET (905 CAPITOL EXPRESSWAY AUTO MALL, SAN JOSE, CA 95136) WHERE IT WAS DIAGNOSED THAT THE BATTERY NEEDED TO BE REPLACED. THE BATTERY WAS REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND REFERRED THE CONTACT BACK TO THE DEALER. THE FAILURE MILEAGE WAS 4,193. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

1 Affected Product ▾

☐ **Request Research** (Services fees apply)

45.    In May 2018, GM notified its dealers of customer complaints related to a loss of propulsion in 2017-2018 Bolt models caused by "software [that] will not detect the difference in the state of charge between the cell groups of the battery and over predict the indicated battery range." The vehicles failed to notify drivers of the depleted state of their batteries, leading to a loss of power while driving. This notification would be recirculated and owners would be re-notified in August 2018 to alert them that "[t]he current software may not provide sufficient warning prior to a battery cell low range condition, which may result in a loss of propulsion."

46.    As the following customer complaints makes clear, customers had endured this defect for months before GM acknowledged a problem:



47.     Bolt owners further felt that GM did not have a good grip on the reason why their batteries were failing.



**May 4, 2018** NHTSA ID NUMBER: 11091674

## Components: ELECTRICAL SYSTEM

**NHTSA ID Number:** 11091674

**Incident Date** April 26, 2018

**Consumer Location** BURLINGAME, CA

**Vehicle Identification Number** 1G1FW6S06H4****

### Summary of Complaint

| | | |
|---|---|---|
| CRASH | No | |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

DESPITE HAVING A FULLY CHARGED BATTERY, WHEN WE PARKED OUR VEHICLE, IT WOULD NOT START. THE ENTIRE ELECTRICAL SYSTEM WAS DOWN. WE JUMPED THE STARTER BATTERY AND THAT PROVIDED ENOUGH POWER TO ALLOW US TO SHIFT INTO NEUTRAL SO THAT WE COULD HAVE THE CAR TOWED. AFTER A WEEK, AND MULTIPLE CALLS TO THE ENGINEERS IN DETROIT, THE DEALER HAS STILL NOT BEEN ABLE TO DETERMINE THE PROBLEM.MY CONCERN IS THAT THEY ARE ATTEMPTING TO REPAIR AN ISSUE WITHOUT HAVING A FULL UNDERSTANDING OF THE PROBLEM. IF THIS ISSUE WERE TO RE-OCCUR WHILE DRIVING AT HIGH SPEED, THE CONSEQUENCES COULD BE CATASTROPHIC, AS THE CAR WOULD IMMEDIATELY COME TO A STOP AND ALL CONTROL MIGHT BE LOST. I DON'T GET THE SENSE THAT GM IS TAKING THIS ISSUE SERIOUSLY ENOUGH. THEY SEEM TO BE TREATING THIS LIKE A TECH COMPANY DEALS WITH SOFTWARE ISSUES. THEY ARE SIMPLY WAITING FOR THE PROBLEMS TO OCCUR AND THEN HAVING THEIR ENGINEERS RUN DIAGNOSTICS. UNFORTUNATELY, GIVEN THE SEVERITY OF THE ISSUE, THEY MAY BE PUTTING LIVES AT STAKE WHILE THEY "DE-BUG" THEIR DESIGN. THIS IS NOT A COMPUTER APP. IT IS A VEHICLE CARRYING HUMANS AT HIGH SPEED. GM NEEDS TO BE MORE PROACTIVE AND TAKE THESE CARS OFF THE ROAD UNTIL THEY FULLY UNDERSTAND THE ISSUE AND HAVE A PERMANENT RESOLUTION.



48.     Also in August 2018, GM followed up with an acknowledgment of low voltage in the battery packs. GM stated: "Certain 2017-2018 model year Chevrolet Bolt EV vehicles may have a condition in which the cells within the battery pack have low voltage. This condition is related to the state of charge of the cell group. Eventually, the difference in the state of charge of the cell groups (average vs. minimum) may exceed a threshold." The remedy for this defect was a replacement of the high voltage battery pack.

49.     This remedy, however, left customers with less range than what GM advertised:



50.     On or about March 28, 2019, GM revised its communication related to the low voltage of the Bolt's battery pack. Though the description of the issue remained the same, the correction changed from replacing the high voltage battery pack to "replac[ing] the appropriate cell battery module."

51.     GM continued receiving customer complaints related to the loss of vehicle propulsion. On or about May 2019, GM's communication stated that the loss of vehicle propulsion was caused by over-voltage of the Hybrid/EV Powertrain Control Module (HPCM), which set the P1AEE error code. The remedy, once the code appeared, was to replace the Hybrid/EV Powertrain Control Module 2.

52. By 2020, GM was receiving complaints about fires stemming from the battery pack, which prompted GM to initiate an internal investigation spanning from August to November of 2020. Despite its knowledge, GM failed to notify Plaintiff and members of the Class of these problems and associated hazards at the time of purchasing their Class Vehicles. Instead, GM did not perform its recall until several fires occurred in the Class Vehicles, delaying the recall to avoid the financial ramifications of having to acknowledge that its Class Vehicles and car batteries were inherently defective by design and incapable of safely providing customers with GM's advertised 238-mile driving range. A sampling of customer complaints is reproduced below and are also included in Exhibit A.



October 21, 2020 NHTSA ID NUMBER: 11365622

## Components: ELECTRICAL SYSTEM

**NHTSA ID Number:** 11365622

**Incident Date** July 30, 2020

**Consumer Location** TEMECULA, CA

**Vehicle Identification Number** 1G1FX6S07H4****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | I BROUGHT THE CAR TO THE DEALER ON 2 SEPARATE OCCASIONS WITH CONCERNS OF A FAULTY BATTERY. THE BATTERY SUDDENLY STOPPED CHARGING FULLY. HOWEVER, I WAS TOLD BY THE DEALER TWICE THAT THE BATTERY WAS FUNCTIONING PROPERLY AND THERE WAS NOTHING THEY COULD DO. I OPENED A CLAIM WITH GM REGARDING THIS INCIDENT, ASKING THEM TO REPLACE THE BATTERY, SINCE IT WAS STILL UNDER WARRANTY, AND THERE WAS CLEARLY AN ISSUE. AFTER MONTHS OF BACK-AND-FORTH, GM CLOSED MY CASE STATING IT WAS NORMAL DEPRECIATION OF THE BATTERY. ONE WEEK AFTER THEY CLOSED MY CASE, THE BATTERY SPONTANEOUSLY CAUGHT FIRE WHILE CHARGING IN MY GARAGE OVERNIGHT. IT TOTALED 2 VEHICLES, CHARRED EVERYTHING IN MY GARAGE, AND CAUSED SUCH SEVERE SMOKE DAMAGE THAT ALMOST EVERYTHING IN MY HOME WAS A TOTAL LOSS. THE FIRE DEPARTMENT DETERMINED THE FIRE ORIGINATED FROM THE TRUNK AREA, WHERE THE BATTERY IS. MY FAMILY IS DISPLACED WHILE REPAIRS ARE BEING DONE TO MY HOME, AT A TUNE OF APPROXIMATELY $200,000 AT THIS POINT. WE LOST APPROXIMATELY $105,000 IN CONTENTS, AS WELL AS THE 2 TOTALED VEHICLES ($75,000). |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

☐ **Request Research** (Services fees apply)



November 17, 2020 NHTSA ID NUMBER: 11374956
**Components: ELECTRICAL SYSTEM, SEATS**

**NHTSA ID Number:** 11374956

**Incident Date** July 25, 2020

**Consumer Location** Unknown

**Vehicle Identification Number** 1G1FW6S09H4****

**Summary of Complaint**

| CRASH | No |
| FIRE | Yes |
| INJURIES | 0 |
| DEATHS | 0 |

2017 BOLT EV WAS PARKED NOSE INTO GARAGE PLUGGED INTO WALL CHARGER CHARGING UNATTENDED WITH MY PHONE SET TO ALERT ME WHEN ESTIMATED TO BE FULLY CHARGED. WHEN I CAME OUT OF THE HOUSE TO UNPLUG CHARGER THERE WAS FIRE VISIBLE UNDER BACK SEAT IN PASSENGER COMPARTMENT OF VEHICLE. CALLED 911 AND BY THE TIME POLICE AND FIRE RESPONDED WITHIN A FEW MINUTES ENTIRE BATTERY UNDER VEHICLE ENGULFED CAR IN FLAMES CAUSING GARAGE FIRE WHICH DESTROYED GARAGE AND ALL IT CONTENTS.JUST LEARNED FROM CARFAX THAT GM ISSUED RECALL NOVEMBER 15 FOR POTENTIAL BATTERY FIRES WHEN AT OR NEAR FULL CHARGE.

1 Affected Product ▾

☐ **Request Research** (Services fees apply)

53.     Upon information and belief, GM has yet to provide a permanent solution. Indeed, it does not anticipate it will do so before the first months of 2021, if it can find a permanent solution at all. Its "interim solution" is simply to diminish the car's battery by limiting its charging capacity to 90 percent of a full charge, which will lower the vehicle's available range. For Bolt owners like Plaintiff, battery capacity reduction will make trips they could complete in one charge before impossible now. Plaintiff will have to account for roadside charging stations when making trips, which will add time to his commute. Plaintiff and other Bolt owners purchased this vehicle because of its advertised EPA-estimated 238 miles of range.

For the foreseeable future, it will be impossible for them to achieve this figure.

### D. GM's Express and Implied Warranties

54.     For each Class Vehicle sold by GM, an express written warranty was issued which covered the vehicle, including but not limited to, the battery, and GM warranted the vehicle to be free of defects in materials and workmanship at the time of purchase or lease.

55.     Pursuant to its express and written warranties, GM warranted the Class Vehicles' high voltage battery pack to be free of defects in design, materials, and workmanship and that repairs and other adjustments would be made by authorized dealers, without charge, to correct defects in materials or workmanship which occurred during the first 8 years or 100,000 miles, whichever came first.

56.     GM also sold or leased the Class Vehicles to Class Members under implied warranties of merchantability and fitness for a particular purpose. GM impliedly warranted the Class Vehicles to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a safe and non-defective condition for use by their owners or lessees for the ordinary purpose for which they were intended and were not otherwise injurious. GM is under a duty to design, construct, manufacture, inspect, and test the Class Vehicles so as to make them suitable for the ordinary purposes of their use— transportation at interstate speeds.

57.     GM breached its warranties for the Class Vehicles as a result of the latent defects in the high voltage battery pack; failing to repair the vehicles as warranted; and otherwise inadequately repairing the defect through limiting software updates to the vehicle's charging capability that reduce the vehicle's range.

58.     In breach of GM's warranties, the Class Vehicles are defective, unsafe, unfit for the ordinary purposes for which they are intended to be used, and not merchantable.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

59.     Class members had no way of knowing about GM's deception with respect to the Class Vehicles and the Battery defect.

60.     Within the period of any applicable statutes of limitation, Plaintiff and members of the proposed Class could not have discovered through the exercise of reasonable diligence that GM was concealing the conduct complained of herein and misrepresenting the company's true position with respect to the Class Vehicles.

61.     Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that GM did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that GM had concealed information about the true safety of the Class

Vehicles, which was discovered by Plaintiff only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that GM valued profits over truthful marketing and compliance with the law.

62.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

**B. Fraudulent Concealment Tolling**

63.     All applicable statutes of limitation have also been tolled by GM's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

64.     Instead of disclosing the Class Vehicle's Battery defect, GM continues to falsely represent that the Class Vehicles are safe.

**C. Estoppel**

65.     GM was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the Class Vehicles' safety and mileage range.

66.     GM knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the safety and mileage range of the Class Vehicles and continues to do so in its advertising and brochures for continued sale of these vehicles.

25

67.     Based on the foregoing, GM is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

68.     Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff seeks certification of the following class:

### Nationwide Class:

All persons who purchased or leased a 2017 – 2019 Chevrolet Bolt ("Class Vehicle") in the United States.

69.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seeks to represent the following state subclasses.

### California Subclass:

All members of the Nationwide Class who are residents of California or purchased or leased their Class Vehicle in California.

70.     Excluded from the proposed Nationwide Class and each proposed Subclass are: General Motors, any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; anyone employed by counsel for Plaintiffs in this action; any judge to whom this case is assigned, her or her spouse, and all persons within the third degree of relationship to either of them, and the spouses of such persons; and anyone who purchased a Class Vehicle for resale.

### A. Numerosity

71.     The members of the classes are so numerous that joinder of all members is impracticable.  While the precise number of Class Members can only be confirmed through discovery, it is estimated that at least hundreds of thousands of persons purchased or leased Class Vehicles.

**B.  Common Questions of Law and Fact Predominate**

72.     There is a well-defined community of interest in the questions of law and fact affecting the Class Members.

73.     There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant that gives rise to those claims of the putative classes, and Plaintiff's claims are based upon the same legal theories as those of the putative classes. The Defendant has engaged in a pattern and practice, in violation of the law, of not informing all purchasers or potential purchasers of the known defect in the Class Vehicles. The resolution of this issue—to wit, whether Defendant knew about the defect and did not inform Plaintiffs and class members—is a common question of fact and law that will affect all members of the class in the same manner.

74.     The questions of law and fact common to the Class predominate over questions that may affect individual members, and include:

a.     Whether General Motors disclosed the known Class defect to Class Members prior to their purchase;

27

b.      Whether General Motors violated state consumer protection laws by concealing the known Class defect;

c.      Whether Class Members are entitled to actual damages and, if so, the appropriate amount;

d.      Whether members of the classes may be notified and warned about the defect and may have the entry of final and injunctive relief compelling General Motors to issue a notification and warning to all Class Members about such a defect;

e.      Whether General Motors deliberately failed to disclose material facts to Plaintiffs and the class members; and

f.      Whether Defendant manufactured defective electronic power steering torque assist sensors and should replace them at no cost to Plaintiffs and the class members.

## C. Typicality

75.    The claims and defenses of the Named Plaintiff are representative of the Class Members he seeks to represent and typical of the claims and defenses of the class because the Plaintiff and the class members all owned Class Vehicles with defective high voltage battery packs that were manufactured and sold by Defendant. Plaintiff, like all class members, purchased a Class Vehicle without having received any warning or notification from Defendant of the defect.

## D. Adequacy of Representation

76.     The Named Plaintiff will fairly and adequately assert and protect the interests of the proposed class because:

      a.     Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the classes;

      b.     Plaintiff has no conflict of interest that will interfere with the maintenance of this class action; and

      c.     Plaintiff has suffered consumer-related injuries and damages.

## E. Superiority

77.     A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

      a.     The common questions of law and fact set forth above predominate over questions affecting only individual Class Members;

      b.     The proposed classes are each so numerous that joinder would prove impracticable. The proposed classes, however, are not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the class unmanageable.

      c.     Prosecution of separate actions by individual members of the class would risk inconsistent and varying adjudications against Defendant;

d. The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover for the damages done to them by GM.

e. A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

78. In the alternative, the proposed classes may be certified because:

a. The prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication regarding individual Class Members, which would establish incompatible standards of conduct for GM;

b. The prosecution of separate actions by individual Class Members would create a risk of adjudications dispositive of the interests of other Class Members not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c. GM has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed class as a whole.

<u>**FIRST CAUSE OF ACTION**</u>
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq*.**
**(Nationwide Class)**

79.    Plaintiff, individually and for the Nationwide Class, hereby incorporates each and every allegation as though fully set forth herein.

80.    For each Class Vehicle, GM issued an express written warranty that covered the vehicle, including but not limited to the battery, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

81.    GM breached its express warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

82.    Plaintiffs and members of the class are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

83.    Defendant GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

84.    The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

85.    Defendant GM's written and implied warranties relate to the future performance of its vehicles because it promised that the battery of the Class Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

86.     Defendant GM has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and similarly situated Nationwide Class members, when their Class Vehicles fail to perform as represented due to an undisclosed battery defect.  GM fails to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Nationwide Class.

87.     Plaintiff, members of Nationwide Class, and the public will suffer irreparable harm if GM is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Nationwide Class by repurchasing their Class Vehicles for their full cost, reimburse the lessees of the Class Vehicles the monies they have paid toward their leases, and cease and desist from marketing, advertising, selling, and leasing the Class Vehicles.

88.     GM is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles sold.

89.     Such irreparable harm includes but is not limited to likely injuries as a result of the defects to the Class Vehicles.

## SECOND CAUSE OF ACTION
### Breach of Express Warranties
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass pursuant to under Cal. Com. Code §§ 2313, 10210)**

90.     Plaintiff, individually and on behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass, hereby incorporates each and

every allegation as though fully set forth herein.

91.    Plaintiff brings this count on behalf of himself and the Nationwide Class or, alternatively on behalf of the California Subclass.

92.    For each Class Vehicle sold by GM, an express written warranty was issued that covered the vehicle, including but not limited to the battery, and which warranted the vehicle to be free of defects in materials and workmanship at the time of delivery.

93.    GM breached its warranties by offering for sale and selling defective vehicles that were by design and construction defective and unsafe, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

94.    GM's breach of its express warranties proximately caused the Plaintiffs and members of the Nationwide Class or, alternatively, Plaintiffs and members of the respective state subclasses to suffer damages in excess of $5,000,000.00.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranties**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass pursuant to Cal. Com. Code §§ 2314, 10212)**

95.    Plaintiff, individually and on behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass, hereby incorporates each and every allegation as though fully set forth herein.

33

96.     Plaintiff brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the California Subclass.

97.     GM impliedly warranted that the Class Vehicles, which it designed, manufactured, sold, or leased to Plaintiff and members of the Nationwide Class and the California Subclass, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

98.     Because the Class Vehicles are equipped with defective high voltage battery packs, the vehicle purchased or leased and used by Plaintiff, the Nationwide Class, and members of the California Subclass is unsafe, unfit for use when sold, threatens injury to its occupants, and is not merchantable. GM breached the implied warranty of merchantability in the sale or lease of the Class Vehicles to Plaintiffs and members of the state subclasses in that the vehicles were not fit for their ordinary purpose and not merchantable.

99.     Plaintiff put GM on notice of the breach of implied warranty. Plaintiff Rankin also sent a letter to GM on December 10, 2020 but has not received a response as of this filing. *See* Exhibit 3.

100.   As a direct and proximate result of GM's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiffs and members of the Nationwide Class or, alternatively, Plaintiffs and members of their state subclasses suffered damages in excess of $5,000,000.00.

## FOURTH CAUSE OF ACTION
### Violations of the Song-Beverly Consumer Warranty Act
### For Breach of Express Warranty
### (Cal. Civ. Code §§ 1790-1795.8)
### (By Plaintiff Rankin on Behalf of the California Subclass)

101.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

102.    Plaintiff Rankin brings this claim individually and on behalf of the California Subclass.

103.    Plaintiff Rankin and the California Subclass members who purchased or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

104.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code  § 1791(a).

105.    GM is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code. § 1791(j).

106.    GM made express warranties to Plaintiffs and the California Subclass within the meaning of Cal. Civ. Code. §§ 1791.2 & 1793.2(d).

107.    GM breached these express warranties by selling and leasing defective Class Vehicles that required a reduction in the battery's capacity within the applicable warranty period. GM refused to pay for replacement of the defective high voltage battery packs in the Class Vehicles.

108.   GM has failed to promptly replace or buy back the Class Vehicles of Plaintiff and the proposed California Subclass as required under Cal. Civil Code § 1793.2(d)(2).

109.   As a direct and proximate result of GM's breach of its express warranties, Plaintiff Rankin and the California Subclass received goods in a condition that substantially impairs their value to Plaintiffs and the other Subclass members. Plaintiff Rankin and the Subclass members have been damaged as a result of, among other things, overpaying for the Class Vehicles, the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, out-of-pocket costs incurred, actual and potential increased maintenance and repair costs, and actual and potential increased insurance costs.

110.   Pursuant to Cal. Civil Code §§ 1793.2 & 1794, Plaintiff Rankin and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Vehicles or the overpayment or diminution in value of their Class Vehicles as well as reimbursement of out-of-pocket expenses incurred as a result of the defect.

111.   Pursuant to Cal. Civil Code § 1794(d), (e) Plaintiff Rankin and the California Subclass are entitled to reasonable costs and attorneys' fees.

<u>**FIFTH CAUSE OF ACTION**</u>
**Violations of the Song-Beverly Consumer Warranty Act**
**For Breach of Implied Warranty**
**(Cal. Civ. Code §§ 1790-1795.8)**

**(By Plaintiff Rankin on Behalf of the California Subclass)**

112.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

113.   Plaintiff Rankin brings this claim individually and on behalf of the California Subclass.

114.   Plaintiff Rankin and the California Subclass members who purchased or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

115.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

116.   GM is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code. § 1791(j).

117.   GM impliedly warranted to Plaintiff Rankin that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code. §§ 1791.2 & 1792.

118.   Section 1791.1(a) provides that: "Implied warranty merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

(1) Pass without objection in the trade under the contract description;

(2) Are fit for the ordinary purposes for which such goods are used;

(3) Are adequately contained, packaged, and labeled;

(4) Conform to the promises or affirmations of fact made on the container or

label.

119.   The defect in the Class Vehicles is present in them when sold and

substantially certain to manifest. The Class Vehicles would not pass without

objection in the automotive trade because the defect exposes all of the vehicles to

a potential battery fire that impedes safe and reliable driving. The defect thus

affects the central functionality of the vehicle and poses a serious safety risk to

driver and passenger safety, leading to expensive and time-consuming roadside

charging because of the vehicle's reduced range.

120.   Because the defect creates an unreasonable risk to driver and

passenger safety, and because the defect impedes safe and reliable driving, the

Class Vehicles are not fit for the ordinary purposes for which such vehicles are

used.

121.   Class Vehicles are not adequately labeled because the labeling fails to

disclose the defect and does not advise the California Subclass of the defect.

122.   Any attempt by GM to disclaim its implied warranty obligations under

the Song-Beverly Act is ineffective due to its failure to adhere to Sections 1792.3

and 1792.4. Those sections of the Civil Code provide that, in order to validly

disclaim the implied warranty of merchantability, a manufacturer must "in simple

and concise language" state each of the following: "(1) The goods are being sold

on an 'as is' or 'with all faults' basis. (2) The entire rise as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Cal. Civ. Code. §1792.4(a). GM's attempted implied warranty disclaimer does not conform to these requirements.

123.    The defect deprived Plaintiff Rankin and the California Subclass of the benefit of their bargain and has resulted in Class Vehicles being worth less than what Plaintiffs and members of the California Subclass paid.

124.    As a direct and proximate result of GM's breach of its implied warranties, Plaintiff Rankin and the California Subclass received goods in a condition that substantially impairs their value to Plaintiffs and the other Subclass members. Plaintiff Rankin and the Subclass members have been damaged as a result of, among other things, overpaying for the Class Vehicles, the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, out-of-pocket costs incurred, actual and potential increased maintenance and repair costs.

125.    Pursuant to Cal. Civil Code §§ 1791.1(d) & 1794, Plaintiff Rankin and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Class Vehicles or the

overpayment or diminution in value of their Class Vehicles as well as reimbursement of out-of-pocket expenses incurred as a result of the defect.

126.   Pursuant to Cal. Civil Code § 1794(d), (e) Plaintiff Rankin and the California Subclass are entitled to reasonable costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
### Fraudulent Concealment
### (On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass)

127.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Count.

128.   Plaintiff brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the California Subclass.

129.   GM intentionally and knowingly concealed, suppressed and/or omitted material facts including the presence of the defective high voltage battery pack.

130.   GM knew (at the time of sale or lease and thereafter) that the Vehicles contained the Battery defect, concealed the defect, and never intended to replace the Battery defect during the relevant warranty periods. To date, GM has not provided Plaintiffs or the class members with a repair or remedy that will eliminate the Battery defect.

131.   GM owed a duty to disclose the Battery defect and its corresponding safety hazard to Plaintiff and the class members because GM possessed superior and

exclusive knowledge regarding the defect. Rather than disclose the defect, GM intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Vehicles and the presence of the Battery defect, to sell additional Vehicles and avoid the cost of repair or replacement.

132.   The fact that the Battery defect causes Class Vehicles to potentially pose a fire risk is material because Plaintiffs and the class members had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard. No reasonable consumer expects a vehicle to be designed, manufactured and assembled such that a defect will pose a significant fire risk.

133.   Plaintiff and the class members would not have purchased or leased the Class Vehicles but for GM's omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Battery defect or would have paid less for the Class Vehicles.

134.   GM knew its concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts. GM knew its concealment and suppression of the Battery defect would sell more Class Vehicles and would discourage Plaintiff and the class members from seeking replacement or repair of the Battery defect. Further, GM intended to induce Plaintiff and the class members into purchasing or leasing the Class Vehicles and to discourage them from seeking repair of the Battery defect, in order to decrease costs and increase profits.

135.  GM acted with malice, oppression and fraud.

136.  Plaintiff and the class members reasonably relied upon GM's knowing concealment and omissions. As a direct and proximate result of GM's omissions and active concealment of material facts regarding the Battery defect and associated safety hazard, Plaintiff and the class members have suffered actual damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class or, alternatively,**
**on behalf of the California Subclass)**

137.  Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint to the extent not inconsistent with the claims asserted in this Count.

138.  This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against GM on the alleged basis of absence of contractual privity or otherwise.

139.  By its wrongful acts and omissions described herein, including selling the Vehicles with defective high voltage battery packs, GM was unjustly enriched at the expense of Plaintiff and the Classes.

140.  Plaintiff and the class members conferred a benefit upon GM by purchasing the Vehicles at the full price for fully functional vehicles equipped with

appropriate and working high voltage battery packs.

141.   GM knew that the Classes were purchasing the Vehicles and still accepted the sum contemplated for fully functional vehicles equipped with appropriate and working high voltage battery packs.

142.   Under the circumstances, it would be inequitable for GM to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing and selling the Vehicles with defective high voltage battery packs to Plaintiff and the Classes. Natural justice and equity require that Plaintiff and the Classes recover under the circumstances.

143.   Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from GM, and an order of this Court proportionally disgorging all profits, benefits, and other compensation wrongfully obtained by GM from its conduct.

## EIGHTH CAUSE OF ACTION
### Violations of the California Legal Remedies Act ("CLRA")
### (Cal. Civ. Code §§ 1750—1785)
### (By Plaintiff Rankin on Behalf of the California Subclass)

144.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

145.   Plaintiff Rankin brings this claim on behalf of himself and the California Subclass.

146.   Defendants are "persons" within the meaning of Cal. Civ. Code § 1761(c).

147. Plaintiff Rankin, as well as members of the California Subclass, are "consumers" as defined under Cal. Civ. Code § 1761(d).

148. Class Vehicles are "goods" as defined under Cal. Civ. Code § 1761(a).

149. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

150. GM engaged in unfair and/or deceptive acts in violation of the CLRA principally because it intentionally or negligently concealed and suppressed material facts concerning the defect resulting in a fire risk in the Class Vehicles. GM did so by failing to disclose the known risk of the defect, reducing the vehicle's battery capacity and range because of the defect, and denying a battery replacement to fully address the defect even while admitting it is unsure if it can restore the vehicle's full capabilities. GM's conduct violated at least the following enumerated CLRA provisions:

      a. GM represented that the Class Vehicles have characteristics, uses, or benefits that they do not have, which is in violation of § 1770(a)(5);

    b.  GM represented that the Class Vehicles are of a particular standard, quality, or grade when, in fact, they are not, which is in violation of § 1770(a)(7);

    c.  GM advertises its Class Vehicles with the intent not to sell them as advertised, which is in violation of § 1770(a)(9);

    d.  GM represents that its Class Vehicles have been supplied in accordance with a previous representation when they have not, which is in violation of § 1770(a)(16); and

    e.  GM inserts an unconscionable provision into its warranty in violation of § 1770(a)(19).

151. GM's unfair and/or deceptive acts or practices repeatedly occurred in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and created a serious safety hazard for the public.

152. GM knew, should have known, or was reckless in not knowing that the Class Vehicles were defective, the high voltage battery packs may ignite without warning, and were not suitable for their intended use.

153. GM was under a duty to Plaintiff Rankin and the California Subclass members to disclose the defective nature of the Class Vehicles and the defect because, among other things, auto manufacturers have a duty to consumers to

disclose safety defects and because GM had superior and exclusive knowledge of the defect.

154.   The facts that GM misrepresented to and concealed from Plaintiff Rankin and the other California Subclass members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase or lease their Class Vehicles or pay a lesser price for them.

155.   The defect poses a serious safety risk and affects the central functionality of the vehicle because a vehicle whose battery pack may suddenly ignite cannot be safely and reliably driven.

156.   In failing to disclose the material defect, GM has knowingly and intentionally concealed material facts in breach of its duty to disclose.

157.   Plaintiff Rankin and the California Subclass have suffered injury in fact and actual damages resulting from GM's material misrepresentations and omissions, including by paying an inflated purchase price for their Class Vehicles and incurring additional out-of-pocket expenses to deal with the defect. Had Plaintiff Rankin and the California Subclass known about the defective nature of the Class Vehicles and the defect, they would not have purchased or leased their Class Vehicles or would have paid less in doing so.

158.   As a direct and proximate result of GM's unfair and deceptive conduct, therefore, Plaintiff Rankin and the California Subclass have been harmed.

159.   This cause of action currently seeks only injunctive relief. Plaintiff on behalf of himself and the California Subclass – sent a demand letter to Defendant via certified mail on or about December 10, 2020, pursuant to the requirements of the CLRA in order to provide the notice required by Cal. Civ. Code § 1782(a).  The CLRA letter advised Defendant that it is in violation of the CLRA and must correct, replace or otherwise remedy the Class Vehicles alleged to be in violation of Cal. Civ. Code § 1770 as a result of the defect. Defendant was further advised therein that in the event the relief requested was not provided within thirty (30) days, Plaintiff may amend the complaint to include a CLRA claim with a request for monetary damage against Defendant pursuant to the CLRA, Cal. Civ. Code §§ 1781 and 1782.

160.   Plaintiff further seeks an order awarding costs of court and attorneys' fees pursuant to Cal. Civ. Code § 1780(e).

161.   Plaintiff CLRA venue declarations are attached hereto as Exhibit 4 in accordance with Cal. Civ. Code §§ 1780(d).

## NINTH CAUSE OF ACTION

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200-17210)**
**(Plaintiff Rankin on Behalf of the California Subclass)**

162.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

163.   Plaintiff Rankin brings this claim individually and on behalf of the California Subclass.

164.   The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. GM's conduct violates each of these prohibitions.

**Unlawful Conduct**

165.   GM's conduct is unlawful because, as set forth herein, it violates the Song-Beverly Consumer Warranty Act and the CLRA, among other laws.

166.   Despite GM's knowledge of the defect, it sold the Class Vehicles to Plaintiff Rankin and the California Subclass; refused to notify Plaintiff Rankin and the California Subclass of the defect; and refused to remediate the Class Vehicles to eliminate the defect.

**Unfair Conduct**

167.   GM's conduct is unfair because it violated California's public policy, including that legislatively declared in the Song-Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. The defect impedes safe and reliable driving of the Class Vehicles.

168.   GM acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

a. Selling Plaintiff and California Subclass members defective Class Vehicles;

b. Failing to disclose the defect despite the opportunity to do so in numerous locations that people in the market for a vehicle would be likely to encounter;

c. Directing and furnishing a software update it knew would not adequately remedy the defect, and reducing the vehicle's battery charging capacity and range and otherwise failing to adequately remedy the defect during the warranty period;

d. Failing to exercise adequate quality control and due diligence over the Class Vehicles before placing them on the market; and

e. Failing to acknowledge the scope and severity of the defect, which poses serious safety concerns, refusing to acknowledge the Class Vehicles are defective and failing to provide adequate relief to Plaintiff and California Subclass members.

169.   The gravity of the harm resulting from GM's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Class Vehicles without providing an adequate remedy to cure the defect harms the public at large and is part of a common and uniform course of wrongful conduct.

170.   There are reasonably available alternatives that would further GM's business interests in increasing sales and preventing false warranty claims. For example, GM could have: (a) acknowledged the defect and provided a permanent, effective fix for the defect, and/or (b) disclosed the defect prior to prospective consumers' purchases.

171.   The harm from GM's unfair conduct was not reasonably avoidable by consumers. The Class Vehicles all suffer from the latent defect, and GM has failed to disclose it. Plaintiff Rankin and the California Subclass did not know of and had no reasonable means of discovering the defect.

### Fraudulent Conduct

172.   GM's conduct is fraudulent in violation of the UCL. GM's fraudulent acts include knowingly and intentionally concealing from Plaintiff Rankin and the California Subclass the existence of the defect and falsely marketing and misrepresenting the Class Vehicles as being functional and not possessing a defect that impedes safe and reliable driving.

173.   GM's misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass to purchase or lease their Class Vehicles or pay more than they would have had GM disclosed the defect.

174.   At all relevant times, GM had a duty to disclose the defect because it had superior and exclusive knowledge of the defect, which affects the central functionality of the vehicle and creates a safety risk for drivers and passengers, and because GM made partial representations about the reliability, quality, and safety of the Class Vehicles but failed to fully disclose the defect.

175.   Accordingly, Plaintiff and the California Subclass have suffered injuries in fact, including lost money or property, as a result of GM's unlawful,

unfair, and fraudulent acts. Absent these acts, Plaintiff, and the California Subclass would not have purchased or leased their Class Vehicles at the prices they paid or would not have purchased or leased them at all.

176.    Plaintiff and the California Subclass seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin GM from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiff and the California Subclass any money GM acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a.    For an order certifying the proposed classes and appointing Plaintiff and Plaintiff's counsel to represent the classes;

b.    For an order awarding Plaintiff and class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.    For an order awarding Plaintiff and the class members restitution, disgorgement and/or any other declaratory, injunctive, or equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper, including the repair of all Class Vehicles, replacement or repurchase

of all Class Vehicles, and/or the refund of money paid to own or lease all Class Vehicles;

> d.      For an order or orders requiring GM to adequately disclose and remediate the Battery defect and enjoining GM from incorporating the defective high voltage battery packs into its vehicles in the future;

> e.      For an order awarding Plaintiff and the class members pre-judgment and post-judgment interest;

> f.      For an order awarding Plaintiff and class members reasonable attorney fees and costs of suit, including expert witness fees; and

> g.      For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff and each Class hereby demand trial by a struck jury of all issues triable by right.

DATED: December 11, 2020              Respectfully submitted,

> */s/ E. Powell Miller*
> E. Powell Miller (P39487)
> Sharon S. Almonrode (P33938)
> Dennis A. Lienhardt (P81118)
> William Kalas (P82113)
> **THE MILLER LAW FIRM, P.C.**
> 950 West University, Suite 300
> Rochester, Michigan 48307
> Tel: (248) 841-2200
> epm@millerlawpc.com

ssa@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

Nicholas A. Migliaccio
(Michigan Bar No. 29077)
Jason S. Rathod
(Michigan Bar No. 18424)
**MIGLIACCIO & RATHOD LLP**
412 H Street N.E., Ste. 302
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Attorneys for the Plaintiff and Putative*
*Class*